**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **FANTA FOFANA, for herself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**SHAKE SHACK ENTERPRISES, LLC,**<br><br>**Defendant.** | **Case No. ________________**<br><br>**JURY TRIAL DEMANDED** |

**COLLECTIVE / CLASS ACTION COMPLAINT**

Fanta Fofana ("Plaintiff"), by and through her undersigned attorneys, hereby makes the following allegations against Shake Shack Enterprises, LLC ("Defendant") concerning her acts upon actual knowledge and concerning all other matters upon information, belief and the investigation of her counsel:

**NATURE OF THE ACTION**

1. Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), New York Labor Law Articles 5 (Hours of Labor), 6 (Payment of Wages), and 19 (Minimum Wage Act), and the New York Compilation of Codes, Rules and Regulations Title 12 § 142-2.1 *et seq*. (collectively, "NYLL") by knowingly suffering or permitting Team Members in all company-owned Shake Shack restaurants nationwide to perform more than *de minimis* unpaid, "off-the-clock" pre-shift, meal break, and post-shift work, failing to reimburse Team Members' out-of-pocket work-related expenses, and failing to provide Team Members with wage statements containing required information about their overtime pay rates and their actual straight-time and overtime hours worked.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action under 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction." This Court also has jurisdiction over this action under 28 U.S.C. §1331 because Plaintiff asserts a claim arising under the FLSA.

3. This Court has supplemental jurisdiction over Plaintiff's New York claims under 28 U.S.C. § 1367, because these claims arise from the same occurrence or transaction as Plaintiff's FLSA claim (*i.e.,* Defendant's failure to pay wages owed at the proper rate for all hours worked) and are so related to this claim as to form part of the same case or controversy.

4. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2), because Plaintiff resides in this District, worked for Defendant in this District, and suffered the losses at issue in this District and Defendant has significant business contacts in this District and is alleged to have engaged in the wrongful conduct at issue in this District, and because actions and omissions giving rise to Plaintiff's claims occurred in this District.

**THE PARTIES**

5. Plaintiff Fanta Fofana is an adult citizen of New York State who resides in Long Island City, N.Y. (Queens Co.). From approximately April 2021 to April 2026, Ms. Fofana worked for Defendant as a full-time Shake Shack Team Member at the Company-owned Shake Shack in Morningside Heights, N.Y. Ms. Fofana is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint and has signed and filed a Consent Form to join this litigation. *See* Fofana Consent Form (Exhibit A).

6. Defendant is the primary operational subsidiary of Shake Shack, Inc., responsible for running Shake Shack's business operations by, among other things, holding its core assets, signing its contracts, managing its daily business operations, and acting as the official employer

of record for the majority of the brand's thousands of domestic restaurant workers and corporate staff. Defendant is a company formed and registered in New York State with a principal place of business at 225 Varick Street in New York City.

## BACKGROUND FACTS

7. As of late 2025, Defendant employed over 13,400 Hourly Team Members in 390 Company-operated locations in 34 states and the District of Columbia,[1] including about 70 Shake Shacks in New York State. Defendant is responsible for operating all company-owned Shake Shacks nationwide, and for all the policies, practices, and conduct at issue in this case.

### Common Expectations, Policies, And Practices

8. Team Members in all Company-owned Shake Shacks have the same primary job duties that include front-of-house customer service work (greeting guests, taking orders, working order expo, and problem solving), back-of-house food preparation work (at the grill, fry, and shake stations, on the assembly line, and performing food prep tasks), and cleaning and safety work (sanitation, dining room care, and food safety duties) typical of fast-casual restaurant employees.

9. Defendant maintains the same publicly stated goals for Team Members in all Company-owned Shake Shacks. These goals, which heavily emphasize customer satisfaction and high performance, include delivering exceptional food and hospitality, providing the "world's best fine casual" experience, bridging the gap between premium fine-dining service standards and the speed of fast food, and ensuring every employee's action matches the brand's promise of integrity, food safety, and community care.

[1] These states are Alabama, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin.

10. In keeping with Defendant's lofty, publicly stated goals and corporate culture of prioritizing hard work and customer satisfaction, all Company-owned Shake Shacks maintain strict attendance and timeliness requirements as well as systematic, progressive discipline policies that directly penalize failure to meet the Company's time and attendance, customer service, and performance standards.

11. All Company-owned Shake Shacks maintain universal payroll, time tracking, and scheduling policies and practices that include a unified weekly pay schedule, use of the same shift scheduling system, use of the same electronic timeclock, requirements to punch in and out for shifts, mandatory meal periods and rest breaks, wages calculated and paid on an hourly basis, a common overtime pay standard (one-and-a-half times their regular hourly rate for time worked over 40 hours in a workweek), common rules for accruing paid time off, participation in the same digital tip pooling system, a common guarantee of payment for all hours logged on the Company's electronic timeclock, a common prohibition on the performance of unauthorized, uncompensated labor, a common "cap" on reporting weekly hours, and common shift allocation rules meant to prevent Team Members from exceeding 40 logged hours per week.

12. Shake Shack Team Members in fifteen states are promised a legally mandated, 30-minute meal break for every shift they work six or more hours.[2]

13. Team Members in all company-owned Shake Shacks undergo a standardized, mandatory work-related training curriculum (the "Shacksperience") meant to maintain the same strict operational protocols (including wage and hour policies and practices) and safety standards from coast to coast.

[2] These states are California, Colorado, Connecticut, Delaware, Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, Oregon, Rhode Island, Tennessee, Washington, and Wisconsin.

**Unpaid Pre-Shift Work**

14. Consistent with Defendant’s time and attendance, customer satisfaction, and performance requirements, Shake Shack Team Members typically arrive at work 20-60 minutes before their scheduled shift start-time.

15. Before clocking in, Shake Shack Team Members typically perform work-related tasks that include entering the restaurant, going to the staff area, changing into their required work uniform and shoes, talking to managers and co-workers about any work needing to be done (*e.g.*, unloading deliveries and stocking), and completing that work.

16. Because Shake Shack Team Members perform this pre-shift work before clocking in, Defendant’s timekeeping system does not track this work or cause any wages to be paid for it.

17. Thereafter, typically at or around their scheduled shift start-times, Shake Shack Team Members punch-in to Defendant’s timekeeping system which tracks their work and causes them to be paid for their recorded work hours.

18. For approximately five years, Ms. Fofana typically arrived at work 20-30 minutes before her scheduled shift start-time to enter the restaurant, go to the staff area, change into her assigned uniform and shoes, talk to her managers and co-workers about any work needing to be done, and spend the time leading up to the start of her scheduled shift doing this work before clocking-in on the timekeeping system.

19. During these years, Ms. Fofana personally observed dozens of Shake Shack Team Members arrive at work well before their scheduled shift start-times and perform work-related tasks before clocking -in on the timekeeping system.

20. Plaintiff’s managers, through their regular observation of Shake Shack Team Members, regular interactions with Shake Shack Team Members and regular discussions with Shake Shack Team Members, have actual knowledge that these employees typically arrive at work

before their scheduled shift start-times and perform work-related tasks for 20-30 minutes before clocking-in at their scheduled shift start-times, but have not stopped them from performing pre-shift work, required them to enter their pre-shift work in Defendant's timekeeping system, or caused them to be paid any wages for their pre-shift work.

21. Shake Shack Team Members have so regularly performed unpaid, "off-the-clock" pre-shift work with their managers' knowledge, direction, and approval that it has become a *de facto* part of their required job duties.

22. If a Shake Shack Team Member fails to follow the pre-shift routine described above, they are at risk of counselling and disciplinary action up to and including termination for violation of Defendant's time and attendance, customer satisfaction, and performance requirements.

23. Despite knowing that Plaintiff and all Shake Shack Team Members routinely perform more than *de minimis* off-the-clock pre-shift work, Defendant has not implemented any system to keep an accurate, contemporaneous record of this work or pay any wages for this work.

**Unpaid Meal Break Work**

24. Defendant promises all Shake Shack Team Members in California, Colorado, Connecticut, Delaware, Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, Oregon, Rhode Island, Tennessee, Washington, and Wisconsin a 30-minute meal break in each shift they work six hours or more. Defendant maintains a common policy that treats Shake Shack Team Members' meal breaks as unpaid time and automatically deducts this time from their daily hours worked without considering whether they actually received an uninterrupted meal break on any given day.

25. At the start of their meal break, Shake Shack Team Members are expected to punch-out of Defendant's timekeeping system to indicate they are on their meal break. While punched

out, Shake Shack Team Members are routinely expected, suffered, and permitted to perform more than *de minimis* work on front-of-house customer service tasks, back-of-house food preparation tasks, and cleaning and safety tasks to keep the restaurant running smoothly.

26. Because Shake Shack Team Members perform their meal break work after clocking-out, Defendant's timekeeping system does not track this work or cause any wages to be paid for it.

27. For approximately five years, Ms. Fofana typically experienced up to four missed or interrupted meal breaks per week to perform more than *de minimis* front-of-house customer service tasks, back-of-house food preparation tasks, and cleaning and safety tasks that were necessary to keep the restaurant running smoothly.

28. During these years, Ms. Fofana personally observed dozens of Shake Shack Team Members perform more than *de minimis* work front-of-house customer service tasks, back-of-house food preparation tasks, and cleaning and safety tasks during their meal breaks to keep the restaurant running smoothly.

29. Plaintiff's managers, through their regular observation of Shake Shack Team Members, regular interactions with Shake Shack Team Members and regular discussions with Shake Shack Team Members, know these employees typically experience missed and interrupted meal breaks to keep the restaurant running effectively during busy periods, but have not made staffing changes to eliminate the need for meal break work, prevented them from interrupting or missing their meal break to keep the restaurant running smoothly during busy periods, required them to enter their meal break work in Defendant's timekeeping system, or caused them to be paid all wages owed for the meal break work they performed.

30. Shake Shack Team Members have so regularly performed more than *de minimis* unpaid, "off-the-clock" meal break work with their managers' knowledge, direction, and approval that it has become a *de facto* part of their required job duties.

31. If a Shake Shack Team Member fails to follow the pre-shift routine described above, they are at risk of counselling and disciplinary action up to and including termination for violation of Defendant's time and attendance, customer satisfaction, and performance requirements.

32. Despite knowing that Plaintiff and all Shake Shack Team Members routinely perform more than *de minimis* off-the-clock meal break work, Defendant has not implemented any system to keep an accurate, contemporaneous record of this work or pay any wages for this work.

**Unpaid Post-Shift Work**

33. Consistent with Defendant's time and attendance, customer satisfaction, and performance requirements, Shake Shack Team Members typically clock-out at their scheduled shift end-time.

34. After clocking out, Shake Shack Team Members typically spend an additional 20-45 minutes performing work-related tasks that include talking to managers and co-workers about any work needing to be done, completing all required shift end and/or closing work (*e.g.*, putting chairs up, cleaning floor mats, waiting for grills to cool and cleaning grills, cleaning the kitchen, stocking, and draining the ice machine), and changing out of their required work uniform and shoes before leaving work.

35. Because Shake Shack Team Members perform this post-shift work after clocking-out, Defendant's timekeeping system does not track this work or cause any wages to be paid for it.

36. For approximately five years, Ms. Fofana typically had to stay at work 20-45 minutes after clocking-out to complete required shift end or closing work (*e.g.*, at the custard and drink station, hot line, prep station and dressing line, front of house and lobby, cashier and point of sale station) before she could leave the restaurant.

37. Over the years, Ms. Fofana has personally observed dozens of Shake Shack Team Members stay at work 20-45 minutes past their scheduled shift end-times to complete required shift end and/or closing work before leaving the restaurant.

38. Plaintiff's managers, through their regular observation of Shake Shack Team Members, regular interactions with Shake Shack Team Members, regular discussions with Shake Shack Team Members, and approval of their required shift end or closing work, know these employees typically clock out at their scheduled shift end-times and work for an additional 20-45 minutes after the end of their scheduled shifts, but have not stopped them from performing post-shift work, required them to enter their post-shift work in Defendant's timekeeping system, or caused them to be paid any wages for their post-shift work.

39. Shake Shack Team Members have so regularly performed unpaid, "off-the-clock" post-shift work with their managers' knowledge, direction, and approval that it has become a *de facto* part of their required job duties.

40. If a Shake Shack Team Member fails to follow the pre-shift routine described above, they are at risk of counselling and disciplinary action up to and including termination for violation of Defendant's time and attendance, customer satisfaction, and performance requirements.

41. Despite knowing that Plaintiff and all Shake Shack Team Members routinely perform more than *de minimis* off-the-clock post-shift work, Defendant has not implemented any system to keep an accurate, contemporaneous record of this work or pay any wages for this work.

**Unpaid Expense Reimbursements**

42. Throughout the relevant period, NYLL Article 6 § 193 has required employers in New York who promise to reimburse their employees' business-related expenses to provide those reimbursements.

43. Throughout the relevant period, Defendant's managers have periodically required Plaintiff and other Shake Shack Team Members in New York to transport food, supplies, or equipment between Shake Shack locations, which (depending on the origin and destination restaurants and the specific circumstances requiring the trip) requires them to incur costs for travel by train, subway, rideshare service, or personal vehicle. Plaintiff and other Shake Shack Team Members in New York may also have incurred other business-related expenses in the course of their employment.

44. To keep its costs down, Defendant does not maintain a system or procedure for Shake Shack Team Members in New York to submit their business-related expenses for reimbursement or otherwise require or encourage Shake Shack Team Members in New York to seek business-related expense reimbursements.

45. As a result, Defendant has failed to reimburse its Team Members in New York for substantial, out-of-pocket payments they have made, both for travel costs and other work-related expenses.

**Failure To Provide Required Wage Statements**

46. Throughout the relevant period, NYLL Article 6 § 195 has required Defendant to provide wage statements with every paycheck its non-exempt employees receive identifying their overtime rate(s) of pay, regular hours worked, and overtime hours worked.

47. Defendant maintains a workweek-based payroll system that provides all Team Members in New York with weekly wage statements. While these statements identify regular

hourly rates for, and hours recorded on Defendant's timeclocks each week by, Team Members in New York, these statements do not show any of the regular or overtime (including "off-the-clock" pre-shift, meal break, and post-shift work) hours Team Members have actually worked or their overtime rates of pay because of the "off-the-clock" practices described above.

## FLSA COLLECTIVE ACTION ALLEGATIONS

48. Plaintiff brings her FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) for all people who worked as Team Members in all company-owned Shake Shacks nationwide during the maximum statutory period and were not paid legally required overtime wages for the overtime hours they worked (the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary when filing for FLSA certification.

49. Plaintiff belongs to the FLSA Collective she seeks to represent because she:

a. worked as a Shake Shack Team Member in a in Company-owned restaurant during the relevant period;

b. regularly spent 20-30 minutes per shift on "off-the-clock" pre-shift work;

c. regularly spent more than *de minimis* work "off-the-clock" during 3-4 of her 30-minute unpaid meal breaks each week;

d. regularly spent 20-45 minutes per shift on "off-the-clock" post-shift work; and

e. spent approximately 5-9 total hours each week on unpaid, "off-the-clock" work without recording this work, creating an accurate contemporaneous record of this work, or receiving any wages for this work.

50. Although Plaintiff and the FLSA Collective members may have worked in different Defendant locations and in different states, this action may be properly maintained as a collective action because, among other things, they:

a. worked under the same material terms and conditions of employment;

b. performed the same job duties and had the same job-related responsibilities;

c. were uniformly trained in Defendant corporate culture of prioritizing hard work and customer satisfaction and placing the highest priority on excellent customer service;

d. faced the threat of discipline for failing to arrive early to perform required work before their scheduled shift start-time, prioritize their work over their ability to take an uninterrupted meal break, or failing to stay at work past the scheduled end of their shift to complete required work;

e. faced the threat of discipline for failing to perform all work required of them;

f. were governed by the same timekeeping policies, practices, and systems;

g. were governed by the same compensation and payroll policies, practices, and systems; and

h. were governed by the same policies, practices and systems concerning work hours, meal breaks, overtime hours, and overtime wages.

51. Plaintiff and the FLSA Collective members do not meet any test for exemption under the FLSA.

52. Plaintiff estimates that the collective group, including both current and former employees over the relevant period, will include over 10,000 members. The precise number of collective group members will be readily available from the applicable personnel, scheduling, time, and payroll records, and from input received from collective group members as part of the notice and "opt-in" process under 29 U.S.C. §216(b).

## NEW YORK CLASS ACTION ALLEGATIONS

53. Plaintiff brings her NYLL claims on a class action basis pursuant to Fed. R. Civ. P. 23 for all people who worked as Team Members in all company-owned Shake Shacks in New York State during the maximum statutory period (the "New York Class"). Plaintiff reserves the right to amend this definition as necessary when filing for class certification.

54. Plaintiff belongs to the New York Class she seeks to represent, because she is a New York resident who worked as a Team Members in a company-owned Shake Shack in New York State during the relevant period.

55. Plaintiff's NYLL claim is appropriate for class treatment because the New York Class satisfies the requirements of Fed. R. Civ. P. 23.

56. The New York Class is so numerous that joinder of all its members would be impracticable. Defendant has employed thousands of people who meet the New York Class definition, meaning that joining all their claims would be impracticable.

57. Plaintiff's claims are typical of the claims belonging to New York Class members because she worked for Defendant under the common policies and practices identified above and was denied legally required wages for her pre-shift, meal break, and post-shift work by Defendant's common course of wrongful conduct.

58. There are material questions of law and fact common to the New York Class members because, as discussed throughout this filing, Defendant engaged in a common course of conduct that has violated the New York Class members' legal rights. The legality of Defendant's policies will be determined by applying generally applicable legal principles to common evidence. Any individual questions Plaintiff's claims present will be far less central to this litigation than the many common questions of law and fact, including:

a. Whether the New York Class members have been required to comply with materially identical timekeeping and compensation policies;

b. Whether Defendant has maintained accurate, contemporaneous records of all the hours the New York Class members worked and properly paid them for all hours worked;

c. Whether Defendant suffered or permitted the New York Class members to perform unpaid pre-shift, meal break, and post-shift work;

d. Whether Defendant has violated the NYLL by improperly denying the New York Class members required wages, failing to make required expense reimbursements, or failing to provide wage statements containing all required information; and

e. Whether Defendant should have to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or be enjoined from continuing the wage and hour violations alleged in this Complaint.

59. Plaintiff will fairly and adequately assert and protect the interests of the New York Class because there is no apparent conflict of interest between Plaintiff and the New York Class members, Plaintiff's counsel have successfully prosecuted many complex class actions (including state-law wage and hour class actions) and will adequately prosecute these claims, and Plaintiff has secured adequate financial resources to assure that the interests of the New York Class will not be harmed because her counsel have agreed to advance the costs and expenses of litigation contingent upon the outcome of this litigation consistent with New York Rule of Professional Conduct 1.8(e).

60. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication because issues common to the New York Class members predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation or so substantial as to obviously justify the litigation of individual claims.

61. Allowing Plaintiff's NYLL claim to proceed as a class action will be superior to requiring the individual adjudication of each New York Class member's claim, since requiring thousands of hourly-paid employees to file and litigate individual wage claims will place an undue burden on the New York Class members, Defendant, and the Courts. Class action treatment will allow many similarly situated people to prosecute their common claims in a single forum

simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually. Moreover, as the injuries suffered by each New York Class member are relatively small, the expenses and burdens associated with individual litigation would make it prohibitively impractical for them to bring individual claims. Further, the presentation of separate actions by individual New York Class members may create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and substantially impair or impede the ability of the New York Class members to protect their interests.

62. Allowing Plaintiff's claims to proceed on a class-wide basis is also appropriate because New York wage laws expressly permit private class action lawsuits to recover unpaid wages.

**COUNT I**
**Failure To Pay Overtime Wages**
**(for the FLSA Collective)**

63. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

64. Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

65. Plaintiff and the FLSA Collective members are "employees" as defined by 29 U.S.C. § 203(e)(1).

66. The wages Defendant pays to Plaintiff and the FLSA Collective members are "wages" as defined by 29 U.S.C. § 203(m).

67. Defendant is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

68. Plaintiff and the FLSA Collective members are similarly situated individuals within the meaning of 29 U.S.C. § 216(b).

69. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce employers' failure to comply with the FLSA's requirements.

70. Throughout the relevant period, Defendant has been obligated to comply with the FLSA's requirements, Plaintiff and the FLSA Collective members have been covered employees entitled to the FLSA's protections, and Plaintiff and the FLSA Collective members have not been exempt from receiving wages required by the FLSA for any reason.

71. 29 U.S.C. § 207(a)(1) requires employers to pay their employees an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked over 40 hours per week.

72. Defendant has intentionally violated the FLSA by maintaining common scheduling, timekeeping, and compensation policies and practices that have denied all Shake Shack Team Members overtime wages due for the overtime work they performed with Defendant's knowledge and for Defendant's benefit.

73. Plaintiff and the FLSA Collective members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been denied overtime premium wages owed for overtime work they performed with Defendant's knowledge that provided Defendant with a direct and substantial benefit.

74. By engaging in this conduct, Defendant has acted with willful and/or reckless disregard for Plaintiff's and the FLSA Collective members' rights under the FLSA.

75. Defendant has no good faith justification or defense for the conduct detailed herein, or for failing to pay Plaintiff and the FLSA Collective members wages the FLSA requires.

**COUNT II**
**Failure To Pay All Wages Due**
**<u>(for the New York Class)</u>**

76. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

77. Defendant is an employer as defined by NYLL Articles 6 and 19.

78. Plaintiff and the New York Class members are "employees" as defined by NYLL Articles 6 and 19 and 12 NYCRR § 142-2.14.

79. The wages Defendant pays and owes to Plaintiff and the New York Class members are "wages" as defined by NYLL Article 19.

80. Throughout the relevant period, Plaintiff and the New York Class members have been entitled to the rights, protections, and benefits provided by NYLL Articles 6 and 19.

81. Throughout the relevant period, Defendant and its Company-owned restaurants in New York were obligated to comply with the NYLL's requirements, Plaintiff and the New York Class members were covered employees entitled to the NYLL's protections and not exempt from receiving wages required by the NYLL for any reason.

82. Defendant is required to pay its employees the correct amount of wages for "each hour worked" under NYLL Article 19.

83. Defendant is required to pay its employees overtime premium wages, equal to at least 1.5 times their regular rate of pay, for all hours worked over forty per week under 12 NYCRR §§ 142–146.

84. Defendant has violated the NYLL and acted with reckless disregard for clearly applicable NYLL provisions, by knowingly suffering or permitting Plaintiff and the New York Class members to perform "off-the-clock" pre-shift, meal break, and post-shift work without properly tracking these work hours or paying all wages owed for these hours.

85. Defendant has violated the NYLL and acted with reckless disregard for clearly applicable NYLL provisions by knowingly suffering or permitting Plaintiff and the New York Class members to work more than 40 hours per week without paying an overtime premium rate for all such hours.

86. Plaintiff and the New York Class members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been denied wages owed for work-related tasks they performed that provided Defendant with a direct and substantial benefit.

87. By engaging in this conduct, Defendant has acted with willful and/or reckless disregard for Plaintiff's and the New York Class members' rights under the NYLL.

88. Defendant has no good faith justification or defense for the conduct detailed herein, or for failing to pay Plaintiff and the New York Class members all wages the NYLL requires.

89. NYLL Article 19 entitles Plaintiff and the New York Class members to recover the full amount of their wage underpayments during the maximum statutory period, plus periods of equitable tolling, an award of costs and reasonable attorneys' fees incurred in pursuing this claim, an award of prejudgment interest paid at the applicable legal rate and a penalty in the amount of 100% of the total payment due for the relevant period as Defendant had no good faith basis to believe its wage payments to Plaintiff and the New York Class members complied with the NYLL.

## COUNT III
## Failure To Reimburse Business Expenses
## (for the New York Class)

90. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

91. Throughout the relevant period, Defendant maintained an official company policy requiring it to reimburse employees' business expenses. This policy gave rise to a legally binding obligation that required Defendant to reimburse Shake Shack Team Members' business expenses by prohibiting it from taking improper wage deductions.

92. Throughout the relevant period, Defendant willfully violated NYLL Article 6 § 193 by causing Plaintiff and the New York Class members to periodically incur work-related expenses

associated with transporting food, supplies, or equipment between Shake Shack locations and, thereafter, failing to timely reimburse these expenses.

93. Defendant has no good faith justification or defense for failing to provide expense reimbursements mandated by NYLL Article 6 § 193.

94. Article 6 § 198 entitles Plaintiff and the New York Class members to recover all the business expenses they paid during the maximum statutory period, plus periods of equitable tolling, and liquidated damages equal to 100% of these payments, interest on the unpaid amounts, and an award of costs and reasonable attorneys' fees incurred in pursuing this claim.

**COUNT IV**
**Failure To Provide Required Wage Statements**
**(for the New York Class)**

95. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

96. NYLL Article 6 § 195 requires employers to provide employees with a wage statement each pay period that includes their overtime rate(s) of pay, number of regular hours worked, and number of overtime hours worked.

97. Throughout the relevant period, Defendant willfully violated NYLL Article 6 § 195 by failing to provide Plaintiff and the New York Class members with a wage statement each pay period that includes their overtime rate(s) of pay, their total number of regular hours worked, and their number of overtime hours worked.

98. Defendant has no good faith justification or defense for failing to provide wage statements mandated by NYLL Article 6 § 195.

99. Article 6 § 198 entitles Plaintiff and the New York Class members to recover $50.00 dollars each time Defendant failed to provide them with the required wage statement during

the maximum statutory period, plus periods of equitable tolling, up to a total of $5,000.00 each and an award of costs and reasonable attorneys' fees incurred in pursuing this claim.

WHEREFORE, Plaintiff respectfully prays for an Order:

a. Certifying this action as a class action;

b. Approving Plaintiff as an adequate representative of both the FLSA Collective and New York Class;

c. Appointing Stephen Zouras, LLC as Class Counsel;

d. Authorizing Class Counsel to issue a notice informing the FLSA Collective of the existence and nature of the action and their right to join this lawsuit;

e. Authorizing Class Counsel to issue a notice informing the New York Class members of the existence and nature of the action and of their right to opt-out of this lawsuit;

f. Finding that Defendant willfully violated the FLSA by failing to pay all required overtime wages to Plaintiff and the FLSA Collective members;

g. Finding that Defendant willfully violated the NYLL by failing to pay all required wages to Plaintiff and the New York Class members, failing to provide required expense reimbursements, and failing to provide required wage statements;

h. Granting judgment in favor of Plaintiff and the New York Class members on all counts;

i. Awarding all available compensatory damages in amounts to be determined;

j. Awarding all available liquidated, punitive, and statutory damages in amounts to be determined;

k. Awarding pre-judgment interest on all compensatory damages due;

l. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

m. Awarding all available equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

n. Awarding Plaintiff and the New York Class members such other and further relief as this Court deems just and proper; and

o. Maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing.

**JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demand a trial by jury.

Respectfully Submitted,

Dated: August 14, 2026

*/s/ Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
One North Broadway Suite 900
White Plains, NY 10601
(914) 298-3281
jfrei-pearson@fbfglaw.com

David J. Cohen
STEPHAN ZOURAS, LLP
170 S. Independence Mall West, Suite 901
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras (*pro hac vice forthcoming*)
STEPHAN ZOURAS, LLP
222 W. Adams Street, Suite 2020
Chicago, IL 60606
312-233-1550
jzouras@stephanzouras.com